UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HERBERT GRUBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:05-CV-1934-G |
| SOUTHWEST AIRLINES, | ) | |
| | ) | **ECF** |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant Southwest Airlines ("Southwest") for summary judgment. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

In March 1999, Southwest hired plaintiff Herbert Grubb ("Grubb") as a flight crew training instructor ("flight instructor"). Oral Deposition of Herbert Grubb("Grubb Deposition") at 69, *located in* Appendix in Support of Defendant's Motion for Summary Judgment ("Appendix to Motion") at 238; *see also* Plaintiff's Original Petition ("Complaint") at 1. A flight instructor trains pilots in flight

simulators and in classrooms in accordance with Federal Aviation Administration and Southwest guidelines. Affidavit of Robert Torti ("Torti Affidavit") ¶ 5, *attached to* Appendix to Motion at 1. Additionally, a Southwest flight instructor must remain current on equipment and instruction techniques by attending monthly instructor meetings, skill practice sessions and critique review sessions, as well as through self study. *Id*. A flight instructor divides his time equally between simulator training and office hours/classroom training. *Id*. ¶ 6.

From December 2002 through June 2004, Southwest staff repeatedly counseled Grubb about behavioral problems, including "nodding off at work while training students in the simulator, during instructor meetings and during office hours; tardiness; and missing office hours." Southwest's Brief in Support of Motion for Summary Judgment ("Motion") at 3. Because of these problems, Southwest encouraged Grubb to seek medical care and offered to him time to do so. *Id*.

On December 3, 4, 16, and 17, 2002, Grubb did not appear at work. Affidavit of David Colunga ("Colunga Affidavit") ¶¶ 4, 5, *attached to* Appendix to Motion at 15; see also *id*., Exhibit A. On December 18, 2002, David Colunga, Southwest's manager of flight instruction, met with Grubb to discuss Grubb's unexcused absences from work. Colunga Affidavit ¶¶ 4, 5, *attached to* Appendix to Motion at 15; see also *id*., Exhibit B. Colunga told Grubb that he had noticed Grubb fall asleep during

instructor meetings. *Id*. In response, Grubb explained that he was taking medication and was seeking treatment for the problem. *Id.*

In March 2003, Southwest requested a diagnosis and prognosis from Grubb's physician. Torti Affidavit ¶ 10, *attached to* Appendix to Motion at 2. During that meeting on March 10, 2003, Grubb admitted that he had a problem and was under medical care. *Id.*; *see also* Colunga Affidavit, Exhibit C, *attached to* Appendix to Motion at 26. Colunga again offered his assistance and recommended that Grubb contact Southwest's counseling service. *Id.* In a memorandum memorializing that meeting, Colunga wrote that "[w]hile I was impressed with his attitude concerning acknowledgment of his problem, I must remember that he has been counseled in the past on these very problems, we have seen no improvement so far." Colunga Affidavit, Exhibit C, *attached to* Appendix to Motion at 26.

In a letter dated May 8, 2003, Colunga wrote Grubb the following.

> On March 10, 2003, you, Jim Evans, Bob Torti, and myself had a meeting to discuss your sleeping problem. In that meeting as you recall, we asked for a diagnosis and a prognosis from your doctor. In addition, we strongly recommended that you get involved with the "Clear Skies" program, and we gave you their phone number at that meeting.
>
> To date, we have not seen any improvement in your sleeping problem, and you have disregarded the requests we made at our March 10, 2003 meeting. You are still falling asleep and snoring in meetings, even during presentations given by different Southwest Airlines Vice Presidents. Additionally, you have fallen asleep during

> numerous simulator and ground school training events. This behavior calls the integrity of Southwest Airlines training into question, and could result in fines to the Company.
>
> Herb, you have been counseled on this matter numerous times by the prior management and by myself no less than 3 times since the end of 2002. This letter is to officially notify you that if we see no changes with your sleeping problem or a lack of compliance with our policies, we will take action to suspend you without pay until you have taken the action necessary to fix your problem.
>
> This letter will be placed in your file. Acceptance of this letter only signifies that you have read it and in no way implies that you agree or disagree with the contents.

Colunga Affidavit, Exhibit D, *attached to* Appendix to Motion at 27.

In a memorandum dated August 13, 2003, Colunga reported the following.

> On August 13 it was reported to me that . . . Grubb had fallen asleep during a Proficiency Training event. . . .
>
> [D]uring the time that . . . Grubb fell asleep, the Pilots vectored themselves onto the final approach and then went missed approach. During the missed approach, they shook the simulator around to see if they could wake him. This attempt failed and eventually Herb did wake up on his own. . . .

Colunga Affidavit, Exhibit E, *attached to* Appendix to Motion at 28.

In a memorandum dated November 11, 2003, Colunga reported a conversation with Grubb regarding Grubb's poor hygiene. Colunga told Grubb that he expected Grubb to "shower daily, wear deodorant, wear pressed trousers and a nice, clean shirt." Colunga Affidavit, Exhibit F, *attached to* Appendix to Motion at 29.

- 4 -

Colunga also observed that Grubb seemed to be "doing better with his sleeping problem." *Id*.

However, in a letter dated January 14, 2004, Colunga suspended Grubb for two weeks due to the fact that Grubb had fallen asleep numerous times in a PT on January 10, 2004, and noted that Grubb's appearance and poor hygiene were a "distraction." Colunga Affidavit, Exhibit G, *attached to* Appendix to Motion at 30.

In a memorandum to Grubb dated January 30, 2004, Colunga welcomed Grubb back to work but issued the following warning.

> Our Flight Crew Training Instructors perform safety-sensitive duties and must be able to give their full attention to our Pilots while conducting training. This cannot be done if the Instructor is sleeping or dosing [sic]. As we do with all Instructors, we will continue to monitor your performance to ensure that you are properly performing the duties of an Instructor.

Colunga Affidavit, Exhibit H, *attached to* Appendix to Motion at 31.

On February 10, 2004, supervisor Don Shull ("Shull") observed Grubb asleep in a simulator. Colunga Affidavit, Exhibit J, *attached to* Appendix to Motion at 33; see also *id.*, Exhibit I, *attached to* Appendix to Motion at 32 ("At one point he told the Trainees to prepare for an approach to a certain runway, and as he turned to change the runway in the simulator, he dozed off again never changing from the original runway."). He was then removed from the training schedule for the remainder of the month. *Id*. On February 11, Colunga met with Grubb. *Id.*, Exhibit I, *attached to*

- 5 -

Appendix to Motion at 32. Grubb stated that he would like to see a specialist in Miami, and Colunga encouraged Grubb to do so. *Id*.; see also *id.*, Exhibit J, *attached to* Appendix to Motion at 33.

On March 4, 2004, Grubb fell asleep behind Colunga numerous times in a monthly instructor meeting. *Id.*, Exhibit K, *attached to* Appendix to Motion at 34. According to Colunga, he "had to reach over and shake [Colunga] more than once during the meeting to reawaken him." *Id*.

On March 11, 2004, Southwest held a fact finding meeting to discuss Grubb's sleeping problem. *Id.*, Exhibit L, *attached to* Appendix to Motion at 35. On March 12, 2004, Grubb informed Southwest that, effective immediately, he was beginning a three and one-half week sleep apnea medical treatment program. *Id.*, Exhibit M, *attached to* Appendix to Motion at 36. Nevertheless, during May 2004, Grubb fell asleep in a new hire training meeting. *Id.*, Exhibit N, *attached to* Appendix to Motion at 37.

On June 21, 2004, Southwest terminated Grubb's employment. *Id*. According to Shull, Grubb "nodd[ed] off during instructor meetings and during office days, [but] [b]efore his termination, Southwest gave him every opportunity to address the lapses and nodding off, but the behavior continued." Affidavit of Donald Shull ("Shull Affidavit") ¶ 10, *attached to* Appendix to Motion at 40.

On June 15 and June 17, 2004, Grubb approached Monica O'Neill, Southwest's coordinator of Family and Medical Leave Act ("FMLA") benefits. Affidavit of Monica O'Neill ("O'Neill Affidavit") ¶¶ 2, 5, *attached to* Appendix to Motion at 45-46.  O'Neill explained Southwest's FMLA procedures to Grubb. O'Neill Affidavit ¶ 6, *attached to* Appendix to Motion at 46.  That is, O'Neill would provide Southwest employees with a FMLA application and then call Broadspire, Aetna's administrator.  *Id*. ¶ 3, *attached to* Appendix to Motion at 45.  Broadspire, in turn, would open a file, assign a claim number, and deliver that claim number to O'Neill.  *Id*.  After that, O'Neill had no further involvement in the case unless the employee had a question about the application process.  *Id*.  Ultimately, Broadspire would notify O'Neill as to whether an employee's application was approved.  *Id*. Southwest is not authorized to determine if an employee is eligible for FMLA benefits.  Affidavit of Mary Masal ("Masal Affidavit") ¶ 7, *attached to* Appendix to Motion at 50.  O'Neill informed Grubb that he needed to deliver a medical certification to Broadspire.  O'Neill Affidavit ¶¶ 3, 6, *attached to* Appendix to Motion at 45-46.  After that, O'Neill had no further contact with Grubb.  *Id*. ¶ 7.  On June 17, 2004, Broadspire opened a file on Grubb.  Masal Affidavit ¶ 8, *attached to* Appendix to Motion at 50.  On July 7, 2004, Broadspire canceled Grubb's claim after it did not receive Grubb's medical certification.  *Id*.  As a result, Broadspire did not approve Grubb's application for FMLA benefits.  *Id*.  Grubb never filed for long term

disability benefits.  Affidavit of Gina Del Rosario ("Del Rosario Affidavit") ¶ 7, *attached to* Appendix to Motion at 52.

On September 29, 2005, Grubb filed this suit, alleging that Southwest (1) violated the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12101, *et seq.*, by discharging him because of his disability and failing to make reasonable accommodation to his disability; (2) violated the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, by denying him leave and benefits; (3) deprived him of benefits under Southwest's employee benefit plan, in violation of Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140; and (4) wrongfully terminated him in violation of Texas state law. Complaint at 2-3.  Southwest now moves for summary judgment on all of Grubb's claims.

## II.  ANALYSIS

### A.  Evidentiary Burdens

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).[1]  "[T]he substantive

---

[1]   The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. See *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id*. at 323-24. To carry this burden, the opponent must do more than simply show some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, he must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. All of the evidence must be viewed, however, in a light most favorable to the motion's opponent. *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Summary judgment is properly entered against the opponent if after adequate time for discovery, he fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

B.  ADA Claim

The ADA prohibits discrimination in employment against qualified persons with a disability.  *Dupre v. Charter Behavioral Health Systems of Lafayette Inc.*, 242 F.3d 610, 613 (5th Cir. 2001); *see also* 42 U.S.C. § 12112(a).  To establish a *prima facie* case under the ADA, Grubb must prove (1) that he has a disability within the meaning of the ADA; (2) that he was qualified for his job; and, (3) that an adverse employment decision was made solely because of his disability.  *Zenor v. El Paso Healthcare System, Limited*, 176 F.3d 847, 852-53 (5th Cir. 1999); *Hamilton v. Southwestern Bell Telephone Company*, 136 F.3d 1047, 1050 (5th Cir. 1998); *Turco v. Hoechst Celanese Corporation*, 101 F.3d 1090, 1092 (5th Cir. 1996).  Such proof may be established either by direct evidence or by indirect evidence using the burden-shifting regimen established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The ADA defines the term "disability" as:  "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Grubb must also establish that the impairment, if it existed as perceived, would be substantially limiting.  *McInnis v. Alamo Community College District*, 207 F.3d 276, 281 (5th Cir. 2000); see also *Deas v. River West, L.P.*, 152 F.3d 471, 475-76 (5th Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999) and *cert. denied*, 527 U.S. 1044 (1999).

To establish a violation of the ADA, Grubb must show "that (1)[]he has a disability; (2)[]he was qualified for the job; and (3) an adverse employment decision was made solely because of [his] disability." *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 763 (5th Cir. 1996); see also *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999). Due to the absence of direct evidence of discrimination in this case,[2] Grubb must use the three-step, "indirect" or "pretext" method of proof detailed in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973); see also *Daigle v. Liberty Life Insurance Company*, 70 F.3d 394, 396 (5th Cir. 1995); *Rizzo*, 84 F.3d at 762. In the first step, Grubb must establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If he produces proof of the elements of a *prima facie* case, a presumption of discrimination arises. See *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). At the second step, Southwest can rebut this presumption of discrimination by offering a legitimate, nondiscriminatory reason for its actions. See *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If Southwest satisfies this burden of production, the *prima facie* case dissolves, and the case proceeds to the third step of the analysis. See *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993). At this third stage,

---

[2] Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption. See *Mooney v. Aramco Services Company*, 54 F.3d 1207, 1217 (5th Cir. 1995); *Brown v. East Mississippi Electric Power Association*, 989 F.2d 858, 861 (5th Cir. 1993).

the burden is on Grubb to prove that the reasons offered by Southwest are pretexts for prohibited discrimination. See *id.* at 507-08.

Southwest argues that "nodding off" is not a recognizable impairment. Motion at 10. For the purpose of deciding this motion, however, the court will assume *arguendo* that, at all relevant times, Grubb suffered from a "disability" within the ADA's definition of that term. To meet his initial burden under *McDonnell Douglas*, however, Grubb must still provide competent evidence that he was qualified for his position, and that Southwest discharged him because of his disability.

To determine whether a plaintiff is otherwise qualified for a given job, the court must conduct a two-part inquiry. First, it must determine whether the plaintiff could perform the essential functions of the job, *i.e.*, functions that bear more than a marginal relationship to the job at issue. Second, if the court finds that the plaintiff is not able to perform the essential functions of the job, it must determine whether any reasonable accommodation by the employer would enable him to perform those functions. See *Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993) (citing *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir. 1991)), *cert. denied*, 511 U.S. 1011 (1994); see also *Jenkins v. Cleco Power LLC*, No. 05-30744, __ F.3d __, 2007 WL 1454363, *5 (5th Cir. May 18, 2007). From the undisputed facts in the record, the court concludes that Grubb could not perform the essential functions of his job, and that Southwest reasonably accommodated Grubb's condition.

Southwest maintains that it discharged Grubb not because of his disability, but because of his poor productivity and his violation of various workplace conduct rules. The burden lies with Grubb to show that he is otherwise qualified. See *Turco*, 101 F.3d at 1093; *Chandler*, 2 F.3d at 1394. Grubb has adduced no facts suggesting that a discriminatory reason likely motivated the decision to terminate his employment or that Southwest's explanation was not credible, *i.e.*, was probably pretextual. See *Hicks*, 509 U.S. at 515-18; *Burdine*, 450 U.S. at 256. Grubb's subjective belief that he was a victim of discrimination is insufficient, without further evidentiary support, to overcome Southwest's articulation of a legitimate, non-discriminatory motive for terminating him. *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 567 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984). Grubb initially did not respond to Southwest's motion for summary judgment on his ADA claim but ultimately filed a supplemental statement regarding his ADA claim after Southwest filed its motion for summary judgment. *See* Supplemental Memorandum, filed on March 8, 2007. Nevertheless, Grubb is unable to recover under the ADA because he has not identified any evidence from which a reasonable factfinder could conclude that Southwest discriminated against him on the basis of his disability. Southwest has produced substantial evidence supporting its claim that its decision to discharge Grubb was based on legitimate, nondiscriminatory reasons. See *Burdine*, 450 U.S. at 253. Grubb has not demonstrated that Southwest's articulated reasons are false,

much less that they are pretexts for disability discrimination.  *Hicks*, 509 U.S. at 507-08; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48 (2000).  Grubb's bare speculation and subjective belief that Southwest terminated him because of his disability are not sufficient to support a claim for disability discrimination.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion. . . .").  It is thus apparent that Grubb has adduced no evidence that would authorize a reasonable fact-finder to find, at a trial, that he was the victim of discrimination when Southwest terminated his employment.  Thus, Southwest is entitled to summary judgment on Grubb's ADA claim.

### C.  FMLA Claim

Enacted in 1993, the FMLA sought to meet the needs of families while accommodating the legitimate interests of employers.  *Bocalbos v. National Western Life Insurance Company*, 162 F.3d 379, 382 (5th Cir. 1998) (citing 29 U.S.C. § 2601(b)(3)), *cert. denied*, 528 U.S. 872 (1999).  To achieve this goal, the FMLA allows eligible employees working for covered employers to take temporary leave for medical reasons, for the birth or adoption of a child, and for the care of a spouse, child, or parent who has a serious health condition.  *Id*. (citing 29 U.S.C.

§§ 2601(b)(1), 2601(b)(2)).  Under its prescriptive and proscriptive provisions, the FMLA provides two methods of recovery.  29 U.S.C. § 2612(a)(1) (setting forth entitlement to FMLA leave), 2614(a) (providing right to restoration to same or equivalent position upon return from FMLA leave), 2615(a) (prohibiting interference with employee's exercise of FMLA rights).  Prescriptively, an eligible employee is granted the right, under certain circumstances, to take up to 12 work-weeks of leave in a 12-month period.  29 U.S.C. § 2612(a)(1).  Upon return from his FMLA leave, the employee is entitled to immediate restoration to the same position, or its equivalent, that he occupied prior to leave.  *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).  If an employer should deny the employee these rights, that employer has violated the FMLA's entitlement provision, and recovery is permitted.  See *Porch v. Dillard's Inc.*, 2004 WL 1809813, at *6 (N.D. Tex. Aug. 12, 2004).  Proscriptively, the FMLA contains prohibitions against penalizing an employee for the exercise of FMLA rights.  29 U.S.C. § 2615(a); see also *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 763 (5th Cir. 2001); *Porch v. Dillard's Inc.*, 2004 WL 1809813, at *8 (N.D. Tex. Aug. 12, 2004) (FMLA protects employees from being discriminated or retaliated against because they have exercised their rights under the FMLA).

When there is no direct evidence of discriminatory intent and the employee maintains that discrimination was the sole reason for his discharge, the burden-

shifting regimen established in *McDonnell Douglas* outlined above is utilized to analyze a plaintiff's FMLA claim. *Richardson v. Monitronics International, Inc.*, 434 F.3d 327, 332-33 (5th Cir. 2005). However, in cases in which an employee claims that discrimination was a motivating factor -- but not the sole factor -- for his termination, the court utilizes a mixed-motive framework analysis. That is,

> (1) the employee must make a *prima facie* case of discrimination; (2) the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or-and herein lies the modifying distinction-(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination. If the employee proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus. The employer's final burden "is effectively that of proving an affirmative defense."

*Id.* (footnotes omitted).

Grubb has failed to establish a *prima face* case of discrimination. Grubb merely points to the timing of his termination and the filing of his FMLA claim. Even if it is assumed *arguendo* that Grubb had made a *prima facie* case, his claim would fail because he did not create a "genuinely contested issue of material fact" with respect to Southwest's "legitimate, non-discriminatory reason for dismissing" him. See *Burton v. Buckner Children and Family Services, Inc.*, 104 Fed. Appx. 394, 396 (5th Cir. 2004),

*cert. denied*, 543 U.S. 1050 (2005). Grubb claims that Southwest terminated his employment because he filed a FMLA claim. On the other hand, Southwest maintains that it terminated Grubb's employment due to his "poor performance and behavioral problems." Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment at 5. Grubb has not proven that Southwest's proffered reasons for terminating Grubb's employment were pretexts for discrimination.

### D.  ERISA Claim

Grubb avers that Southwest terminated his employment for the purpose of depriving him of benefits under Southwest's employee benefit plan, in violation of ERISA Section 510. ERISA provides that "[i]t shall be unlawful for any person to discharge . . . a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . ." 29 U.S.C. § 1140. To recover under this section, Grubb "need not show that 'the *sole* reason for his . . . termination was to interfere with pension rights'; however, the plaintiff must show that the employer had the 'specific intent to violate ERISA.'" *Clark v. Resistoflex Company*, 854 F.2d 762, 770 (5th Cir. 1988) (quoting *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3rd Cir.), *cert. denied*, 484 U.S. 979 (1987)) (emphasis in original).

Under Section 510 of ERISA, Grubb must first establish a *prima facie* case that Southwest discharged him with a specific discriminatory intent to prevent attainment of benefits to which he would have become entitled under the plan. 29 U.S.C. § 1140; *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997). "The plaintiff in such an ERISA employment discrimination test need not prove that the discriminatory reason was the only reason for discharge, but he must show that the loss of benefits was more than an incidental loss from his discharge, and this inference of discrimination can be proven by circumstantial evidence." *Stafford,* 123 F.3d at 295. If Grubb can establish his *prima facie* case of discrimination, then Southwest must articulate a non-discriminatory reason for its actions. *Id.* If Southwest succeeds in doing so, then the burden shifts back to Grubb to demonstrate that Southwest's explanation is nothing more than pretext, and that the real purpose he was fired was to deny him benefits governed by ERISA. *Id.*

To establish a *prima facie* case, Grubb must show that Southwest had the specific intent to violate ERISA when it terminated him. *Unida v. Levi Strauss & Company*, 986 F.2d 970, 980 (5th Cir. 1993). Grubb's complaint alleges that he was discharged to prevent his benefits from vesting under Southwest's ERISA plan. Complaint at 2-3. He did not respond to Southwest's motion for summary judgement on his ERISA claim. Grubb cannot survive Southwest's motion for summary judgment merely by resting on the allegations in his pleadings. See *Celotex*,

477 U.S. at 324.  "[W]hile [Grubb is] entitled to have reasonable inferences drawn in [his] favor, the inferences to be drawn must be rational and reasonable, not idle, speculative, or conjectural." *Unida*, 986 F.2d at 980 (internal quotations omitted).  It would be speculative to infer, on the basis of Grubb's proffered evidence, that Southwest intended to interfere with Grubb's entitlement to pension benefits.  See *id.* The summary judgment record contains no evidence of any specific intent on the part of Southwest to prevent Grubb from obtaining ERISA benefits.  Without sufficient evidence to support a finding that Southwest had the specific intent to deprive Grubb of benefits under ERISA, the court need not address the question of whether Southwest's stated reason for terminating Grubb was pretextual.  See *Clark*, 854 F.2d at 771 ("[W]here the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him.") (footnote omitted).

### E.  Wrongful Termination Claim

Southwest argues that the ERISA exception to the well-pleaded complaint rule applies, so that Grubb's state law claim for wrongful termination is superseded by the ERISA preemption provision.  Motion at 44.  Grubb did not respond to Southwest's motion for summary judgment of his wrongful termination claim.  In his complaint,

however, Grubb claims that Southwest wrongfully terminated his employment to avoid paying him retirement and pension benefits.  Complaint at 3.  According to Southwest, this claim arises under ERISA because Grubb's prayer for past and future pension rights implicates benefits protected by ERISA.  Motion at 44.  A state law claim addressing the right to receive benefits under an ERISA plan necessarily "relates to" to ERISA and is thus preempted.  *Dorn v. International Brotherhood of Electrical Workers*, 211 F.3d 938, 948 (5th Cir. 2000).  Consequently, Grubb has not stated a viable claim for wrongful termination.  See *Herring v. Oxy Vinyls L.P.*, No. H-05-0719, 2005 WL 1653076, *3 (S.D. Tex. July 08, 2005).

### III.  CONCLUSION

For the reasons stated, Southwest's motion for summary judgment is **GRANTED**.

**SO ORDERED**.

June 11, 2007.

_____
A. JOE FISH
CHIEF JUDGE